**UNITED STATES DISTRICT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

BRUCE MEYERS;
KALLIE ROESNER-MEYERS;
and EUGENIA CALOCASSIDES,
    Plaintiffs,

v.

VILLAGE OF OXFORD, a Michigan
home-rule village;
JOE YOUNG, in his personal and official
capacity as Village Manager of the Village
of Oxford;
SUE BOSSARDET, in her personal and
official capacity as President of the Village
of Oxford; and
MICHAEL SOLWOLD, in his official
capacity only as the Acting Police Chief of
the Village of Oxford;
ROBERT CHARLES DAVIS, in his
personal and official capacity as an
administrative officer (Village Attorney) of
the Village of Oxford,
    Defendants
_____/

Case No.: 17-cv-10623
Honorable Denise Page Hood

**FIRST AMENDED COMPLAINT
JURY DEMANDED**

OUTSIDE LEGAL COUNSEL PLC
PHILIP L. ELLISON (P74117)
Attorney for Plaintiffs
PO Box 107
Hemlock, MI 48626
(989) 642-0055
(888) 398-7003 - fax
pellison@olcplc.com
_____

*NOTICE: The same exhibits are being and utilized
as attached to the original complaint pleading, ECF No. 1*

**FIRST AMENDED COMPLAINT**

    NOW COMES Plaintiffs BRUCE MEYERS, KALLIE ROESNER-MEYERS, and EUGENIA CALOCASSIDES, by and through counsel, and complains as follows:

1

## PARTIES

1. Plaintiffs BRUCE MEYERS, KALLIE ROESNER-MEYERS, and EUGENIA CALOCASSIDES are residents of the State of Michigan who have acted and operated as Village of Oxford Police Reservists and members of the Village of Oxford Police Reservists' Horse Mounted Division.

2. Defendant VILLAGE OF OXFORD is a municipal corporation formed as a home rule village under the laws of the State of Michigan.

3. Defendant JOE YOUNG is, on information and belief, a resident of the State of Michigan and currently is serving as Village Manager as that position is defined under the Code of Ordinances of the Village of Oxford and the laws of the State of Michigan; he is sued in his individual and official capacities.

4. Defendant ROBERT CHARLES DAVIS is, on information and belief, a resident of the State of Michigan and currently is serving as Village Attorney as that position is defined as an administrative officer under the Code of Ordinances of the Village of Oxford and the laws of the State of Michigan; he is sued in his individual and official capacities.

5. Defendant SUE BOSSARDET is, on information and belief, a resident of the State of Michigan and currently is serving as Village President as that position is defined under the Code of Ordinances of the Village of Oxford and the laws of the State of Michigan; she is sued in his individual and official capacities.

6. Defendant MICHAEL SOLWOLD is, on information and belief, a resident of the State of Michigan and currently is serving as acting Police Chief as that position is defined under the Code of Ordinances of the Village of Oxford and the laws of the State of Michigan; he is sued in his official capacity only.

## JURISDICTION

7. This Honorable Court has jurisdiction pursuant to 28 U.S.C. § 1331, § 1343, and § 1367(a) as this case involves federal question(s) and federal civil rights enforceable pursuant to 42 U.S.C. § 1983, together with 28 U.S.C. § 2201 and (possible) supplemental state issues resolvable pursuant to 28 U.S.C. § 1367.

8. Venue is proper in this district pursuant to 28 U.S.C. § 1391.

## GENERAL ALLEGATIONS

9. This case involves three individuals who are Village of Oxford Police Reservists and members of the Village of Oxford Police Reservists' Horse Mounted Division (or Unit) of the Village of Oxford Police Department.

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

10. Prior to the events in question, non-party Village of Oxford Police Chief Michael Nemanowski would request members of the Lapeer County Mounted Unit to come to the Village of Oxford to work festivals and provide crowd patrols.

11. Eventually, Police Chief Michael Nemanowski requested and made Plaintiffs BRUCE MEYERS, KALLIE ROESNER-MEYERS, and EUGENIA CALOCASSIDES reserve officers for the Village of Oxford Police Department.

12. Plaintiffs BRUCE MEYERS, KALLIE ROESNER-MEYERS, and EUGENIA CALOCASSIDES were issued badges and uniforms bearing the name and authority of the Village of Oxford Police Department, see **Exhibit A**.

13. According to the Village of Oxford Police Department's website, the reserve unit "consists of 13 reserve officers" and "is completely voluntary…," **Exhibit B**.

14. Additionally, it has been explained that:

> The main goal of this division is to supplement the patrol division. The reserve officers work mainly on Friday and Saturday nights. They patrol on foot, on bike or patrol car in the downtown area. They also handle most of the traffic control assignments for holiday parades and other special events. **Exhibit B**.

15. With the advent of various events and festivals and the needs for patrols within the Village, Police Chief Nemanowski approached Plaintiffs BRUCE MEYERS, KALLIE ROESNER-MEYERS, and EUGENIA CALOCASSIDES about becoming part of the Chief's newly created horse mounted division.

16. Horses and horse culture are important in the Village of Oxford as its town festival and identity is premised on the Lone Ranger, a fictional masked former Texas Ranger who fought outlaws in the American Old West with his Native American friend, Tonto.

17. The Lone Ranger persona and related horse culture is so important that the Village Government reprints the Lone Ranger creed in each of their monthly meeting agendas. See **Exhibit C**.

18. In September 2016, Plaintiff KALLIE ROESNER-MEYERS spoke with and later emailed Police Chief Nemanowski about a new opportunity to participate in the Mounted Police Colloquium. **Exhibit D**.

19. As was explained, Plaintiffs confirmed they "would very much like to represent our fantastic community and have prepared and trained for this event." **Exhibit D.**

20. It was further explained that "[a]ll we would need to represent the department and bring the certification and any awards back to the Village of Oxford is a

letter from the department stating that we are representing the Village of Oxford for this event."

21. Plaintiffs confirmed:

> We are trained and have all served on the Lapeer County Sheriff's Mounted Unit and have completed the Reserve Police Officer Academy and were fully certified on Pistol, Rifle and OC spray with LCSD. We have exceptional horses, trailers, tow vehicles and tack. The only expense to the department would be for the standard uniforms.

22. On September 15, 2016, Police Chief Nemanowski issued a written letter to the organizers of the Mounted Police Colloquium, stating:

> My agency is in the process of creating the first Police Reserve Officer's Horse Mounted Unit. The members of this Mounted Unit will consist of Officers Kallie Roesner, Dr. Bruce Meyers and Eugenia Calocassides. It would be an honor to have them represent the Oxford Village Police Department for your upcoming Mounted Police Colloquium. **Exhibit E**.

23. At this time upon information and belief, Village Manager Joe Young sought and obtained liability insurance for the operation and existence of a Horse Mounted Unit within the Village of Oxford Police Department.

24. By operation of the authority of the Chief of the Village of Oxford Police Department, Police Chief Nemanowski confirmed that Plaintiffs were, in fact, reserve officers, and the members would be part of the Village of Oxford Police Reserve Officer's Horse Mounted Unit.

25. Plaintiffs, acting on the authority and direction of Police Chief Nemanowski, went to Kentucky representing the Village of Oxford and did quite well in many of the competitions.

26. On October 11, 2016, Police Chief Nemanowski presented Plaintiffs to the Village Council as members of the Village's new Reserve Officer's Horse Mounted Unit during the Oxford Village Council's monthly meeting.

27. At this meeting, members of the Oxford Village Council publicly expressed gratitude and approval of Plaintiffs' activities as part of the Horse Mounted Division. **Exhibit F**.

28. Due to their successes, Plaintiffs were asked and did become members of the Michigan Multi-Jurisdictional Mounted Police Drill Team representing the Village of Oxford.

29. Then a surprise honor happened for the Michigan Multi-Jurisdictional Mounted Police Drill Team and the Village of Oxford's Horse Mounted Division; they

4

were asked to be part of the Inauguration ceremonies and parade for the swearing in of then President-elect Donald J. Trump in Washington DC.

30.     On December 22, 2016, Police Chief Nemanowski wrote to the Michigan Multi-Jurisdictional Mounted Police Drill Team stating:

> Yes! I am honored to approve and send my three Mounted Officers to the upcoming Presidential Inaugural Parade. The officers are: Kallie Meyers, Bruce Meyers, and Eugenia Calocassides. **Exhibit G**.

31.     Plaintiffs eagerly prepared and undertook great expense to prepare themselves and their horses to represent the Village of Oxford and its police department, as recognized reserve officers, as part of the Michigan Multi-Jurisdictional Mounted Police Drill Team for the Inauguration ceremonies and parade.

32.     With this great honor, the Oakland Press published a story on January 6, 2017 about the news of being selected to be part of a nationally-historic event, and how Oxford's local reserve officers are participating in this event. **Exhibit H.**

33.     Then, at the next Oxford Village Council meeting, members of the Oxford Village Council became unglued by this news without explanation, especially in light of the approval and gratitude of the October 11, 2016 meeting.

34.     Throughout the meeting, members of the Village Council questioned Plaintiffs' reputation, good name, honor, and integrity by being part of Village of Oxford's Reserve Officer's Horse Mounted Unit, even to the point of accusing Plaintiffs of violating the penal law by impersonating police officers. **Exhibit I**.

35.     One council member, Erik Dolan (a former police officer) literally conducted a police-like interrogation of the Police Chief Nemanowski in the middle of public meeting of the Oxford Village Council.

36.     After the Oxford Village Council had completed its bitter and unprovoked attacks on Plaintiffs' reputation, good name, honor, and integrity, the Oxford Village Council passed a resolution by motion that notice and communications should be issued that the Oxford Village Council has not reviewed, approved, or authorized any mounted police division, reserve or otherwise, within the Village of Oxford; and that such be transmitted also to the Michigan Multi-Jurisdictional Mounted Police Drill Team.

37.     The resolution by motion also included that Plaintiffs were to lose their public reservists positions because, according to the motion, these Plaintiffs are not part of the Village of Oxford in any way; and demanded the return of their police badges, uniform, and equipment.

38.     Despite the wide action taken against the Plaintiffs' reputation, good name, honor, and integrity, the Village of Oxford did not provide Plaintiffs with notice or the opportunity to formally conduct a name clearing hearing or to allowed them the opportunity to present testimony/evidence prior to the Oxford Village Council's causing

interference and impingement upon Plaintiffs' reputation, good name, honor, and integrity.

39.     At no point did the members of the Village Council give prior notice of their proposed action or that interference and impingement upon Plaintiffs' reputation, good name, honor, and integrity would or could occur at the January 10, 2017 Village Council meeting.

40.     On January 13, 2017, Defendant ROBERT CHARLES DAVIS transmitted a notice, on behalf of *the Village Council*, removing Plaintiffs from their role as reserve officers, and precluded their actions previously authorized by Police Chief Nemanowski and implicitly approved by Defendant JOE YOUNG in purchasing insurance for the mounted unit. **Exhibit J.**

41.     Under a Michigan Home Rule Village, the Village Council only has legislative, not executive, authority over the affairs the Village of Oxford.

42.     It is expressly the duty of every Village governmental officer, including Defendants JOE YOUNG, SUE BOSSARDET, and ROBERT CHARLES DAVIS, to preserve the two (2) divisions of Village government distinct and separate," Village Code of Ordinances, § 2.3.

43.     By way of further separation of powers, the Village Code of Ordinances directs that the Village Council and its members shall only "deal with the administrative service solely through the Village manager and neither the Council nor any members thereof shall give orders to any subordinates of the Village Manager, either publicly or private, Village Code of Ordinances, § 3.9a.

44.      Furthermore, the Village Council and its members are prohibited, by the Village Code of Ordinances, from directing or requesting the removal of any person from employment or office for which the Village Manager is responsible; see Village Code of Ordinances, § 3.9a.

45.     All administrative power, duties, and functions of the Village of Oxford is vested in the Village Manager, not the Village Council, Village Code of Ordinances, §5.1.

46.     By the Village Council taking the action it did, the Village Council and its members violated Village Code of Ordinances, §§ 2.3 and 3.9a by its vote on January 10, 2017.

47.     On February 14, 2017 (after retaining counsel), Plaintiffs BRUCE MEYERS and KALLIE ROESNER-MEYERS, by counsel, transmitted a formal legal demand for a name clearing hearing. **Exhibit M.**

48.     The Village of Oxford and its officials refuse to provide such a hearing.

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

49. All defendants took no steps to begin the proceedings causing further harm to the reputation, good name, honor, and integrity of Plaintiffs BRUCE MEYERS and KALLIE ROESNER-MEYERS by not immediately allowing the constitutionally-obligated hearing be held to exonerate Plaintiffs' actions.

50. Communications from Defendant ROBERT CHARLES DAVIS, as the Village Attorney (which is an administrative office in the Village via the Village Code of Ordinances), refused to begin the proceedings unless certain conditions were met.

51. Plaintiffs BRUCE MEYERS and KALLIE ROESNER-MEYERS refused to condition their name clearing rights on conditions not authorized by law.

52. On February 24, 2017, Plaintiff EUGENIA CALOCASSIDES, by counsel, transmitted a formal legal demand for a name clearing hearing. **Exhibit N.**

53. Again, all defendants took no steps to begin the proceedings causing further harm to Plaintiff EUGENIA CALOCASSIDES' reputation, good name, honor, and integrity.

54. Communications from Defendant ROBERT CHARLES DAVIS, as the Village Attorney (which is an administrative office in the Village), showed that further waiting for any such name clearing hearing for Plaintiff EUGENIA CALOCASSIDES is and was futile.

55. The improper actions of the Village Council and its members and administrative officers caused Plaintiffs to suffer harm to their reputation, good name, honor, and integrity, see e.g. **Exhibit K and L**.

## COUNT I
## VIOLATION OF PROCEDURAL DUE PROCESS
## DENIAL OF NAME CLEARING HEARING - 42 U.S.C. § 1983
## (AGAINST DEFENDANTS YOUNG, BOSSARDET, & DAVIS)

56. The previous paragraphs are alleged herein as if set forth for word within this Count.

57. The Fourteenth Amendment forbids state actors from depriving individuals of life, liberty or property without due process of law and Plaintiffs have and enjoy a constitutionally protected liberty interest in their reputation, good name, honor, and integrity.

58. All Defendants are state actors or were acting under the color of law.

59. By preparing and then carrying out the above-mentioned actions of January 10, 2017, Defendants failed to give pre-meeting notice and the opportunity to be heard on the preplanned actions of causing interference and impingement upon Plaintiffs' reputation, good name, honor, and integrity related to Plaintiffs' duties and rights as reserve unit officers and members of the horse mounted unit acting under the

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

authority and auspices of Police Chief Nemanowski and Defendant JOE YOUNG as Village Manager.

60. By preparing and carrying out the actions of January 10, 2017 and the later letter of January 13, 2017, all Defendants were in violation of Village Code of Ordinances, §§ 2.3 and 3.9a.

61. Following the actions of January 10, 2017 and the later letter of January 13, 2017, all Defendants failed to provided and otherwise flatly ignored all written demands/requests for a name clearing hearing as is constitutionally obligated under federal law.

62. One or all Defendants undertook voluntary, public dissemination of false information about the Plaintiffs' duties and rights as reserve unit officers and members of the horse mounted unit acting under the authority and auspices of Police Chief Nemanowski and Defendant JOE YOUNG as Village Manager.

63. One or more Defendants illegally and wrongfully took action regarding the Plaintiffs' duties and rights as reserve unit officers and mounted unit reservists (acting under the authority and auspices of Police Chief Nemanowski) in violation of Village Code of Ordinances §§ 2.3 and 3.9a.

64. Due process requires that Plaintiffs have the opportunity to clear his or her name to protect his/her liberty interests regarding reputation, good name, honor, and integrity.

65. By the actions and deliberate inactions of Defendants, Plaintiffs have been publicly harmed by the dissemination of false information about the former duties and roles of Plaintiffs as reserve unit officers and members of the horse mounted unit acting under the authority and auspices of Police Chief Nemanowski and/or Defendant JOE YOUNG as Village Manager, Plaintiffs were and are subject to community ridicule, scorn, contempt, distain, mockery, and has suffered losses related to having a proper reputation, good name, honor, and integrity.

66. By the actions and inactions of Defendants, Plaintiffs has suffered serious damaged his/her standing and associations in the community and specifically as to Plaintiff KALLIE ROESNER-MEYERS caused her to believe that she is about to lose her long-time public position held with the Township of Oxford.

67. Defendant(s)' conduct of indifferently and wantonly refusing to provide Plaintiffs their constitutionally-entitled name clearing hearing, even with receipt of a formal demands for the same, is conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results to the Plaintiffs.

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

## COUNT II
## VIOLATION OF PROCEDURAL DUE PROCESS
## DENIAL OF NAME CLEARING HEARING – MONELL CLAIM - 42 U.S.C. § 1983
## (AGAINST DEFENDANT VILLAGE OF OXFORD)

68. The previous paragraphs are alleged herein as if set forth for word within this Count.

69. Defendant VILLAGE OF OXFORD failed to conform to requirement of protecting and adhering to the constitutional rights of Plaintiffs alleged as violated above.

70. Defendant VILLAGE OF OXFORD's conduct, as outlined above by and through its agents, caused the deprivation of federal rights belonging to Plaintiffs by Defendant VILLAGE OF OXFORD's own policy, custom or practice, and/or by the decision not to act by the final policy maker of this governmental unit in refusing to protect and adhere to the due process rights these Plaintiffs.

## COUNT III
## DECLARATORY RELIEF - 28 U.S.C. § 2201
## (AGAINST ALL DEFENDANTS)

71. The previous paragraphs are alleged herein as if set forth for word within this Count.

72. Because the Village Council and its named members hereby lack the ability and right to direct or request the removal of any person from employment or office for which the Village Manager is responsible, Village Code of Ordinances, § 3.9a, Plaintiffs legally remain and should be declared still fully in their reservists positions despite the attempted unlawful removal by the Village Council.

73. This Court is requested to declare, pursuant to the Declaratory Judgment Act, that Plaintiffs have and continue to have the rights hold the public office of Village of Oxford Police Reservist and/or part of the Horse Mounted Unit until such time as the Village Manager orders their removal from these positions consistent with federal and state law, and the Village Code of Ordinances.

### RELIEF REQUESTED

74. WHEREFORE, Plaintiffs BRUCE MEYERS, KALLIE ROESNER-MEYERS, and EUGENIA CALOCASSIDES respectfully requests this Court to—

   a. Enter declaratory judgment finding one or more Defendants have violated Plaintiffs' due process rights guaranteed under federal law;

   b. Enter an order for injunctive relief to halt the refusing to provide a name clearing hearing in violation of the Fourteenth Amendment to the United States Constitution;

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

    c.    Enter a judgment awarding all damages, including compensatory, nominal, and punitive damages, allowed and permitted by law;

    d.    Enter a declaratory judgment that the vote of January 10, 2017 and the subsequent letter issued by Defendant ROBERT CHARLES DAVIS was undertaken and/or issued in violation of Plaintiffs' due process rights and in violation of the Code of Ordinances of the Village of Oxford and Plaintiffs still retain their public offices;

    e.    Award attorney fees, costs, and interest allowed by law, including via 42 U.S.C. § 1988; and

    f.    Grant all other relief deemed appropriate and equitable.

## JURY DEMANDED

75.    Plaintiffs reassert and rely upon their prior demand a jury for all triable issues.

Date: March 8, 2017                             RESPECTFULLY SUBMITTED:

/s/ Philip L. Ellison
OUTSIDE LEGAL COUNSEL PLC
BY PHILIP L. ELLISON (P74117)
PO Box 107 · Hemlock, MI 48626
(989) 642-0055
(888) 398-7003 - fax
pellison@olcplc.com

Attorney for Plaintiffs

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

10