UNITED STATES DISTRICT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRUCE MEYERS, et al.
    Plaintiffs,

v.

VILLAGE OF OXFORD, et al,
    Defendants
                               /

Case No.: 17-cv-10623
Honorable Denise Page Hood

**MOTION**

| OUTSIDE LEGAL COUNSEL PLC | DAVIS BURKET SAVAGE |
|---|---|
| PHILIP L. ELLISON (P74117) |   LISTMAN TAYLOR |
| Attorney for Plaintiffs | ROBERT C. DAVIS (P40155) |
| PO Box 107 | Attorneys for Defendants |
| Hemlock, MI 48626 | 10 S. Main St, Suite 401 |
| (989) 642-0055 | Mt Clemens, MI 48043 |
| (888) 398-7003 - fax | (586) 469-4300 |
| pellison@olcplc.com | rdavis@dbattorneys.com |

**MOTION TO DISQUALIFY ATTORNEY ROBERT CHARLES DAVIS AND HIS LAW FIRM AS COUNSEL OF RECORD FOR ALL DEFENDANTS**

NOW COMES Plaintiffs BRUCE MEYERS, KALLIE ROESNER-MEYERS, and EUGENIA CALOCASSIDES, by and through counsel, and moves to disqualify attorney ROBERT CHARLES DAVIS as counsel of record, as well as his law firm, Davis Burket Savage Listman Taylor, for "all defendants" as listed ECF No. 9 pursuant to Rules 1.7, 3.7, and 1.10 of the Michigan Rules of Professional Conduct and related case law.

1

## CONCISE STATEMENT OF THE ISSUES PRESENTED

Is Defendant Robert Charles Davis and his law firm disqualified from serving as counsel for all defendants in this case?

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

**CONTROLLING / APPROPRIATE AUTHORITY FOR RELIEF SOUGHT**

Mich. R. Prof. Conduct 3.7(a)
Mich. R. Prof. Conduct 1.7(b)
Mich. R. Prof. Conduct 1.10(a)
*Aleynu, Inc. v. Universal Prop. Dev. and Acquisition Corp*,
    564 F.Supp.2d 751 (2008)

**BRIEF**

This case involves three individuals who have served and been serving as police reservists with the Village of Oxford Police Department. See ECF No. 7. Plaintiffs were issued badges and uniforms by the Police Chief bearing the name and authority of the Village of Oxford Police Department. They were authorized by Village administration and publicly thanked for their service and participation before the Village Council. Plaintiffs represented the Village of Oxford with the Michigan Multi-Jurisdictional Mounted Police Drill Team, which was asked to be part of then President-elect Donald J. Trump's inauguration festivities in Washington, D.C. in late January 2017. It was approved by Village administration, namely the Police Chief. **Exhibit G**. Substantial time and resources were spent in preparation for this event—after all, transporting several half-ton creatures and their gear across multiple states is not something that can happen on a whim. Then, a completely unexpected and uncalled for melt down happened at the January 10, 2017 Village Council meeting and serves as the basis for this legal action.

At the January 10, 2017, meetings certain members of the Village Council 'dressed down' the Police Chief and became unglued by news of their Village's Horse Mounted Unit going to President Trump's inauguration

4

festivities. Throughout the meeting, members of the Village Council questioned, interfered, and impinged upon Plaintiffs' reputation, good name, honor, and integrity (a liberty right under the 14th Amendment) by being part of Village of Oxford's Reserve Officer's Horse Mounted Unit, even to the point of falsely accusing certain Plaintiffs of previously violating the penal law by impersonating police officers. It was uncalled for and (likely in the absence of immunity) would constitute defamation. Defendant Robert Charles Davis was an active participant in this attack. Shortly after this meeting, Davis wrote various letters to Plaintiffs stripping them of their Village police positions. And when formally requesting name-clearing hearings, Davis is believed to be an active participant with the other defendants in refusing to provide this due process right.

Davis is the village attorney for the Village of Oxford. Unlike a typical attorney-client relationship, the Village Attorney is an administrative public office created and operating under the color of law. Village of Oxford Code of Ordinances, §5.3, *available at* https://goo.gl/k1tYz0.[1] The Village Attorney has a seat at the Council table at all public meetings, participates in the deliberation, formulation, and execution of Village policy, and aids in the decision-making outcomes of the Village Council. The January 10,

---

[1] "[T]he administrative officers of the Village shall be the Clerk, the Treasurer, the Assessor, the Village Attorney, the Police Chief, the Fire Chief, the Health Officer, and the Department of Public Works Superintendent, and all other officers approved by the Council."

5

2017 meeting was no different by Davis. During the January 10, 2017 meeting, he was an active participant in the meeting; he also advocated *his* position as part of deliberations. For example, Davis spoke as a public officer during the meeting as follows:

> Can I speak for a second here? I'm piecing together the facts and I've been watching the facts develop over the last couple days. It seems to me that when the President is saying we're not disputing that, I think she's saying that the substance of the request of the request sounds great. You know, if *we* were buying new desks and drawers the substance of that request could sound great. I think what *we're* facing here is the problem that the request, bundled up and presented as an agenda item, put on for Council action, reviewed by everybody prior to a meeting and at a meeting, the chance to ask questions, and then a vote; that procedure never happened. So *we're* not, I don't think anyone is disputing that this might be a great substantive thing *** but what I'm hearing is that this matter never, like the purchase of an ink pen, never came to Council for approval. That's what I'm hearing.

See https://youtu.be/3H7yYslZS8k?t=1h42m49s (Jan 10, 2017 meeting). Later, the President of Village Council, Sue Bassardet, made a motion to not only disqualify the existence of the Mounted Horse Unit but also strip Plaintiffs of their public position with the Village of Oxford Police Department. See https://youtu.be/3H7yYslZS8k?t=1h56m46s (Jan 10, 2017 meeting). On information and belief, Davis created and drafted that motion *before* the January 10, 2017 meeting in a pre-planned way to destroy the Plaintiffs' reputation, good name, honor, and integrity—a right protected by federal law, see e.g. *Chilingirian v. Boris*, 882 F.2d 200, 205

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

6

(CA 6, 1989). Later, Davis (and not the Council under its letterhead) wrote Plaintiffs allegedly "informing" the latter they were no longer members of any police reserve unit of any kind with respect to the Village of Oxford; the Village has not authorized any relationship with any of you by way of a reserve unit, parade tern, drill team, color guard, mounted division, or otherwise (which is contrary to Exhibit G); Village has not authorized or sanctioned any of you, individually or as a team, to portray or represent yourself as part of the Village of Oxford Police Department, reserve or otherwise; and more. **Exhibit J**.

Plaintiffs then demanded name-clearing hearings. See **Exhibits M and N**. Davis (likely in concert with other defendants acting under the color of law) refused to provide it. It is believed Davis consulted with now-outgoing Village Manager Davis and President Sue Bassardet to prevent anyone in the Village, be it the Village manager or the Village council, from providing the required name-clearing hearings, which would bring to light these Defendants' individual and collective wrongful actions.

In short, Davis was not acting merely as an advising or consulting attorney but affirmatively and actively acting as a public official under the color of law who has the individual legal duty and responsibility _not_ to deprive citizens of their federal civil rights under the color of law.

7

Throughout the interaction by the undersigned demanding a name-clearing hearing, Davis would respond or providing emailed letters/statements allegedly acting on behalf of the Village Council in the role of Village attorney—a public office. However, none of these actions were done pursuant to a vote or voted-upon direction by the Village Council in responding to the Plaintiffs' demands for their federal due process rights. Repeatedly, the undersigned indicated that Davis cannot serve as counsel in this case because he was a necessary witness and a party-defendant.

Despite the notices and warnings, Davis, a name party, appeared as counsel for all defendants on March 15, 2017. ECF No. 9. The undersigned immediately wrote to Davis re-informing him of MRPC 3.7, confirming federal courts' enforcement of said rule, and requested he voluntarily withdraw. **Exhibit O**. He has refused to do so and instead wrote more communications vaguely requesting concurrence for an alleged violation of Rule 15 and dismissal under Rule 12(b). This motion now follows.

## MEMORANDUM OF LAW

MRPC 3.7(a) provides that:

A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness except where:

(1) the testimony relates to an uncontested issue;

8

>  (2) the testimony relates to the nature and value of legal services rendered in the case; or
>
>  (3) disqualification of the lawyer would work substantial hardship on the client.

Mich. R. Prof. Conduct 3.7(a). None of the three exceptions apply here. In the commentary of Rule 3.7, the drafters explained that

> Combining the roles of advocate and witness <u>can prejudice the *opposing party*</u> and can involve a conflict of interest between the lawyer and client.
>
> The opposing party may properly object where the combination of roles may prejudice that party's rights in the litigation. A witness is required to testify on the basis of personal knowledge, while an advocate is expected to explain and comment on evidence given by others. It may not be clear whether a statement by an advocate-witness should be taken as proof or as an analysis of the proof.

Courts confronted with this question have erred on the side of safety. For example, Judge Lawson applied Rule 3.7 to preclude an attorney from representing a client when the attorney himself had a legal interest in the underlying outcome of the case. *Aleynu, Inc. v. Universal Prop. Dev. and Acquisition Corp*, 564 F.Supp.2d 751 (2008). This makes sense as Judge Lawson explained[2] that while courts must be sensitive to the competing public policy interests of preserving client confidences and of permitting a party to retain counsel of his choice, the interest sought by the rule is to

---

[2] Judge Lawson seemingly originally raised the issue of disqualification sua sponte.

9

protect *the opposing party* by preventing counsel from arguing that the lawyer's own testimony ought to be believed, and making the disqualification purely personal strips the possibility of some of its potential for abuse. *Id.* And as the standard for the instant motion, *Aleynu* counsels that extensive involvement by the conflicted attorney with all parties on both sides of the lawsuit renders intolerable the likelihood that he will slip into and out of his roles as advocate and fact witness.

Interestingly, Judge Lawson disqualified the attorney when the attorney was simply only participating as counsel (not a named party) in the case. In the instant case, Davis' conflict is even greater, as he is a named-party—a far greater role than merely as an attorney. Like in *Aleynu*, Davis' extensive involvement, including his own potential personal liability, renders intolerable the likelihood that he will slip into and out of his roles as advocate and fact witness because he is expressly acting to be both in this case. This is improper. Davis, as both a necessary witness and a party-defendant, possesses an insurmountable conflict of interest that prejudices not only his own clients for whom he appeared (as he may need to point to one or more as being the real liable party) but also the plaintiffs in this matter. When "there is a reasonable possibility that some specifically identifiable impropriety actually occurred" an attorney should be disqualified

as an attorney in the case. Plaintiffs have affirmatively alleged that identifiable impropriety and requested resulting civil penalties under Section 1983. *Aleynu, supra* (citing *Moses v. Sterling Commerce (America), Inc.*, 122 Fed.Appx. 177, 184 (CA 6, 2005)); see also ECF No. 9.

In addition, Rule 1.7 and Rule 1.10 are applicable here as well. Rule 1.7(b) provides—

> A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests unless
>
> > (1) the lawyer reasonably believes the representation will not be adversely affected; and
> >
> > (2) the client consents after consultation. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved.

Rule 1.10(a) provides—

> While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7….

Michigan Ethics Opinion RI-281, in addressing Rule 3.7, advises, "[i]f the lawyer's expected testimony will be adverse to the client, MRPC 1.7(b) would be applicable, and if the lawyer is precluded from trying the case under that Rule, the disability would be imputed to other firm members."

11

State Bar of Michigan Ethics Opinion RI-281 (Sept 11, 1996).[3] And while Rule 3.7(b) envisions an attorney acting as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness, Rule 1.10 independently requires otherwise. *Aleynu, supra,* at 758-759.

## ARGUMENT

If the probity of a lawyer's own conduct in a circumstance is in serious question, it may be impossible for the lawyer to give a client detached advice, which in turn will undoubtedly cause the challenged attorney to slip into and out of his roles as advocate and fact witness which is prejudicial to the opposing parties. This is why Rule 3.7 exists. Because Davis more than just a "likely witness" (and an almost guaranteed witness as a named party-defendant in his role acting under the color of law), and also a key participant at all stages of the circumstances that make up the basis of this suit (including his own reasonable likelihood of civil rights liability), he is precluded and disqualified from being counsel this case pursuant to MRPC 3.7(a).

Moreover, this case cannot be transferred to another attorney in Davis' law firm because the lawyer's expected testimony will be adverse to the client and MRPC 1.7(b) would be applicable, whereby the lawyer is

---

[3] http://www.michbar.org/opinions/ethics/numbered_opinions/ri-281

precluded from trying the case under that Rule and the disability would be imputed to other firm members under Rule 1.10(a). In short, Davis has to sit this one out as counsel and advocate for the defendants under professional responsibilities rules and the rationale of *Aleynu*. There is clearly no shortage of highly qualified, independent attorneys in the metro Detroit area who can serve the interests of all defendants who lack the disqualifying conflict of interest existing with Davis.

Moreover, Rule 1.10(a) and Rule 1.7(b) also preclude Davis' law firm, Davis Burket Savage Listman Taylor, from acting as alternate counsel in this case.

### RELIEF REQUESTED

Wherefore, Plaintiffs request this Court to enter an order disqualifying Defendant ROBERT CHARLES DAVIS (and his law firm Davis Burket Savage Listman Taylor) from appearing and serving as counsel of record for all defendants solely related to this case. The Court is requested to grant defendants a reasonable amount of time secure new counsel in this matter.

Date: March 19, 2017  RESPECTFULLY SUBMITTED:

/s/ Philip L. Ellison
PHILIP L. ELLISON (P74117)
OUTSIDE LEGAL COUNSEL PLC
PO Box 107
Hemlock, MI 48626
(989) 642-0055
(888) 398-7003 - fax
pellison@olcplc.com

Attorney for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that on date stated below, I filed the foregoing document with the ECF/CM system which will serve an email copy of the same to all counsel of record (at their email address of record) on the date stated below.

Date: March 19, 2017  RESPECTFULLY SUBMITTED:

/s/ Philip L. Ellison
OUTSIDE LEGAL COUNSEL PLC
BY PHILIP L. ELLISON (P74117)
PO Box 107
Hemlock, MI 48626
(989) 642-0055
(888) 398-7003 - fax
pellison@olcplc.com

Attorney for Plaintiff

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com